Benjamin NISSIM, Plaintiff,

v.

McNEIL CONSUMER PRODUCTS COMPANY, INC. Defendant.

Civil Action No. 95–3211.

United States District Court,
E.D. Pennsylvania.

Jan. 15, 1997.

Gerald J. Williams, Williams and Cuker, Philadelphia, PA, Stephen S. Pennington, Center for Disability Law and Policy, Philadelphia, PA, Elizabeth A. Hillig, Jeffrey M. Daitz, Williams and Cuker, Philadelphia, PA, for Plaintiff.

Anita B. Weinstein, Jeffrey Ivan Pasek, Cozen and O'Connor, Philadelphia, PA, for Defendant.

### MEMORANDUM

LOWELL A. REED, Jr., District Judge.

Currently before this Court is the timely post-trial motion of plaintiff Benjamin Nissim to alter or amend the judgment and enter an award of back pay damages pursuant to Federal Rule of Civil Procedure 59(e), or, in the alternative, grant a new trial on the issue of damages pursuant to Federal Rule of Civil Procedure 59(a) (Document No. 75), and response thereto.[1] For the following reasons, I will deny the motion of plaintiff.

### I.  BACKGROUND

Plaintiff brought an action against defendant McNeil Consumer Products Company,

---

1. Plaintiff has also filed a motion asking the Court to excuse him of the obligation to order a transcript of the trial as required by Local Rule 7.1(e) (Document No. 78). While a transcript might afford more references to the testimony, I will excuse plaintiff of his obligation to supply a transcript or partial transcript because I find that the transcript is not necessary for the resolution of the Rule 59 motion in light of my recollection of the testimony and the exhibits presented to the jury. As well, I do not wish to burden plaintiff with the expense of the transcript at this time. If, at a later point, plaintiff seeks further review or files an appeal, plaintiff may have to provide a trial transcript at that time.

Inc. ("McNeil"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a) and the Pennsylvania Human Relations Act, 43 P.S. § 954 ("PHRA") seeking damages for alleged discrimination in employment on account of race, religion, or national origin and for retaliatory discharge.[2] Prior to the close of the jury trial, plaintiff withdrew his claim under the PHRA as well as his claims for reinstatement, front pay, and punitive damages. The case was tried before a jury from December 2, 1996 through December 6, 1996. On December 9, 1996, the jury returned a verdict in favor of defendant on the claim for discrimination and in favor of plaintiff on the claim for retaliatory discharge. However, the jury found that plaintiff suffered no damages caused by the retaliatory discharge, and thus did not award plaintiff any back pay or compensatory damages.[3]

Plaintiff contends that the judgment should be altered or amended to accurately reflect the effect of the jury's finding of retaliation. Specifically, plaintiff claims that back pay damages should be awarded.[4] In the alternative, plaintiff requests that this Court order a new trial on the damage issue alone. Defendant argues that the jury verdict is not inconsistent with the evidentiary record, and thus should not be disturbed. The defendant also asserts that, should this Court grant a new trial, the case should be retried for both liability and damages.

## II. LEGAL STANDARD

■ Rule 59(e) allows parties to file a motion "that questions the correctness of the judgment...." *New Castle County v. Hartford Accident & Indem. Co.*, 933 F.2d 1162, 1176 (3d Cir.1991). Under Rule 59(e), a party must rely on one of three grounds: (1) new evidence not previously available, (2) intervening change in controlling law, or (3) need to correct a clear error of law or prevent manifest injustice. *Smith v. City of Chester*, 155 F.R.D. 95, 96–97 (E.D.Pa.1994). Plaintiff neither offers new evidence nor claims that there has been a change in controlling law. Rather, the contentions of plaintiff are grounded in the third prong. Specifically, plaintiff claims that the jury finding of liability for retaliatory discharge but its failure to award damages is "unjust and anomalous." Plaintiff's Mem. at 4.

■ Courts should not disturb jury verdicts "absent exigent circumstances such as a case of manifest and extreme abuse of the jury's function." *Pearsall v. Emhart Indus., Inc.*, 599 F.Supp. 207, 211 (E.D.Pa.1984) (citing *Bruce Lincoln–Mercury, Inc. v. Universal C.I.T. Credit Corp.*, 325 F.2d 2, 21–22 (3d Cir.1963)). "In reviewing the propriety of a jury verdict, [this Court's] obligation is to uphold the jury's award if there exists a reasonable basis to do so." *Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223, 1230 (3d Cir.1989); *see also Bruce Lincoln–Mercury, Inc. v. Universal C.I.T. Credit Corp.*, 325 F.2d 2, 21 (3d Cir.1963); *Brandy v. Flamboyant Inv. Co.*, 772 F.Supp. 1538, 1541 (D.Vi.1991). Accordingly, I must search the record for any evidence which could have reasonably led the jury to reach its verdict, drawing all reasonable inference in favor of the verdict winner. *Blum v. Witco Chem. Corp.*, 829 F.2d 367, 372 (3d Cir.1987) (citing *Massarsky v. General Motors Corp.*, 706 F.2d 111, 117 (3d Cir.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983)).

## III. DISCUSSION

■ The ostensible favor of courts toward the verdict winner and the reluctance of courts to tamper with the jury verdict is essential for the purpose of preserving the integrity of the jury system and abiding by the Seventh Amendment constitutional right to a jury trial, a right that plaintiff himself exercised here by requesting a jury trial and

---

2. Plaintiff's claims were submitted for court annexed compulsory arbitration as the sum in controversy was certified by plaintiff to be less than $100,000.00. The arbitrators found in favor of the employer defendant and the plaintiff appealed seeking a jury trial *de novo*.

3. *See infra* note 10 (verdict form).

4. Plaintiff does not seek compensatory damages in his Rule 59(e) motion. *See* Plaintiff's Motion at 6 n.4. Plaintiff notes that should the Court grant a new trial pursuant to Rule 59(a), the issue of compensatory damages should also be retried. *Id.*

by further agreeing that a back pay award be determined by the jury, and not this Court.[5] Now, when the back pay award did not result in his favor, plaintiff urges this Court to overturn the jury verdict. I decline to do so as there is no "clear error of law" or "manifest injustice" present here.

Plaintiff has cited no case or statute, and I have found none, that mandates the award of back pay damages upon a finding of retaliatory discharge.[6] Therefore, there is no clear error of law here sufficient to disturb the jury verdict. I will next consider whether the jury verdict constitutes a "manifest injustice."

After review of the record, I find that there was sufficient evidence from which the jury could reasonably have concluded that plaintiff suffered no damages, and thus not award back pay. The evidence shows that plaintiff went through a difficult divorce during the last year of his employment at McNeil and was unruly and disruptive on the job. Consequently, plaintiff received a mandatory referral to the Employee Assistance Program ("EAP") in mid-January 1993 to help correct his behavioral and performance problems at work. Testimony of Mark New at 28–29 [7]; Stipulation of Facts ¶ 3; Defendant's Exhibit No. 8–60. Mark New, former Director of Human Resources at McNeil, testified that mandatory referral is for instances involving severe inappropriate behavior whereby continued employment is contingent upon employee improvement and the employee following the recommendations of the EAP. Testimony of Mark New at 28–29.

The jury could reasonably have been persuaded by the testimony of several witnesses and various exhibits that plaintiff's conduct showed no sign of improvement while in the EAP. For example, plaintiff failed to regularly attend various meetings required for Production Control personnel, and when he did attend, he did not participate in the meetings in any constructive manner. Defendant's Exhibit Nos. 8–29, 8–30, 8–66. His colleagues continued to complain of his uncooperative conduct and poor performance. Defendant's Exhibit Nos. 8–24, 8–25, 8–47, 8–54, 8–55, 8–66. In one incident, plaintiff did not follow proper procedure when he released the access code to the computer system, and in a subsequent meeting, he denied having released the access code. Testimony of Maureen Koval at 16; Defendant's Exhibit Nos. 8–38, 8–54. Because plaintiff's conduct and performance did not improve, defendant issued him a Final Warning letter on April 2, 1993, which stated in pertinent part:

> The next incident in which you miss a scheduled meeting or are late to a scheduled meeting without a reasonable excuse or display hostile and unprofessional behavior to your co-workers either in a meeting or day to day contact, I will have no alternative but to recommend further disciplinary action up to and including termination of employment.

Defendant's Exhibit 8–67. Given this evidence, I find that the jury could have reasonably concluded that plaintiff would have been terminated, even in the absence of any retal-

---

**5.** Plaintiff argues that because back pay is a form of equitable relief under Title VII, it is "within the province of the Court, not the Jury." Plaintiff's Motion ¶ 23. However, both parties in this case consented to a trial by jury and consented to the submission of the back pay award to the jury. In fact, plaintiff's own proposed jury instructions included directions for determining the amount of back pay damages. *See* Plaintiff's Proposed Jury Instructions No. 19 (Document No. 45). Therefore, I find that the award of back pay here was within the province of the jury, and I will apply the appropriate analysis for examining a jury verdict.

**6.** At least two other courts have not awarded damages even upon a finding of liability in discrimination cases. *See Lewis v. American Foreign Serv. Ass'n*, 846 F.Supp. 77, 82–83 (D.D.C.

1993) (upholding the jury finding that plaintiff is not entitled to back pay even though defendant did retaliate against plaintiff because the jury found that the defendant would have terminated her regardless of the unlawful motive); *Jackson & Coker, Inc. v. Lynam*, 840 F.Supp. 1040, 1052–53 (E.D.Pa.1993) (employee was not entitled to damages because there was no evidence on the record that plaintiff suffered damages even though the jury found that employee was retaliated against in violation of Title VII), *aff'd*, 31 F.3d 1172 (3d Cir.1994).

**7.** The deposition testimony of Mark New and Maureen Koval were read to the jury because these witnesses were not present at trial. All page references to their testimony are from the depositions.

iatory motive on the part of defendant, and therefore plaintiff suffered no damages on account of the retaliation.[8] I now turn to the jury instructions and verdict form to inquire whether the jury was permitted to reach such a result.[9] Plaintiff did not object to any of the relevant instructions.

There is nothing in the jury instructions that mandates the jury to award damages upon a finding of liability. Rather, the jury was instructed that if they found unlawful discrimination or retaliation, they were to "*consider* the issue of damages." Jury Instructions at 34 (emphasis added). The instructions also stated that

> [t]he burden is on plaintiff to prove the nature and extent of any injuries or damages he claims were caused by McNeil. In other words, the plaintiff must prove by a preponderance of the evidence that he was damaged and that there is a causal relationship between the violations of McNeil, if any, and the damages to plaintiff.

*Id.* In addition, the jury instructions stated: "If you find that plaintiff has suffered economic loss caused either by an unlawful termination based on ... retaliatory discharge, then you *may* award plaintiff the back pay you find he would have earned *if plaintiff had not been terminated.*" *Id.* at 35 (emphasis added). The jury could reasonably conclude from this instruction alone that (1) an award of back pay was not compulsory even upon a finding of liability, and (2) if plaintiff would have been terminated anyway, notwithstanding any retaliation, then no back pay award was necessary. Moreover, the structure of the verdict form, which required separate findings for both liability and damages, confirms that a result of finding retaliation without awarding back pay was possible.[10] Neither party objected nor took exceptions to the verdict form, (indeed they both agreed to the form), further evidencing the parties' agreement that the jury could find liability for retaliation and not award back pay.

On a final note, I want to highlight the finding of the jury that defendant did *not* terminate plaintiff's employment as a result of unlawful discrimination. This finding of no unlawful discrimination coupled with the cornucopia of evidence as to plaintiff's faulty conduct and performance at work, which did not improve even after plaintiff was referred

---

8. Plaintiff points to the jury instructions on the retaliation claim that described retaliation as "a determinative factor in the decision of McNeil to terminate his employment and that 'but for' his making complaints of discrimination, regardless of the merits of those complaints, plaintiff would not have been terminated from his employment at McNeil." In response, defendant argues that this "but for" requirement is softened by subsequent jury instructions that required plaintiff to prove a "causal connection" between the making of complaints and termination. Further, defendant points out that the jury was instructed that "plaintiff does not have to prove that retaliation was McNeil's only reason for terminating his employment, but he must prove that McNeil intentionally acted to terminate his employment at least in part to retaliate." *See* Jury Instructions at 27–28. Reading the jury instructions as a whole, the jury could reasonably conclude that although there was some connection between plaintiff's making complaints and his termination, plaintiff's termination was imminent regardless of any retaliatory motive by defendant.

9. The jury instructions were written and filed of record (Document No. 72). References are to the page numbers of those instructions as filed.

10. The verdict form as returned by the jury upon reaching its verdict is as follows:

1. Do you find that plaintiff has proven by a preponderance of the evidence that McNeil terminated his employment as the result of intentional race, religion or national origin discrimination?

YES [ ]
NO [X]

2. Do you find that plaintiff has proven by a preponderance of the evidence that McNeil terminated his employment in retaliation for his making complaints of discrimination?

YES [X]
NO [ ]

**If you answered "NO" to questions 1 and 2, then contact the deputy clerk and inform him that you have finished. If you answered "YES" to questions 1 or 2, please continue to answer the next question.**

3. Do you find that plaintiff suffered damages caused by his unlawful termination?

YES [ ]
NO [X]

4. If you answered "YES" to question # 3, what amount do you award as damages?

A. $_____ (back-pay)
B. $_____ (compensatory damages)

**Contact the deputy clerk and inform him that you have finished.**

Verdict Form (Document No. 73)

to the EAP, supports the inference that the jury could reasonably have concluded that plaintiff's termination was imminent by May 12, 1993, when he was terminated, regardless of any retaliation by defendant, and that plaintiff suffered no damages.

I also recognize that the jury could have reasonably found that defendant "retaliated" in a nonmalicious or benign manner when it terminated plaintiff, and therefore find that plaintiff suffered no damages. No where in the jury instructions is the term retaliation defined, let alone defined as encompassing an improper motive or animus. If the jury accepted a generic definition of the term retaliation, the jury could reasonably have concluded that the defendant employer merely reacted to the unsubstantiated complaints of discrimination made by plaintiff, in the face of months of bad conduct on the part of plaintiff, and terminated his employment. Because the jury was presented with evidence that plaintiff received severance pay through July 18, 1993, the jury could have reasonably concluded that plaintiff suffered no damages. Testimony of Mark New at 49–50; Defendant's Exhibit No. 9–61.

I cannot say that the jury verdict is so inconsistent with the evidence as to constitute a "manifest injustice" in light of the evidence in the record and the strong presumption in the law in favor of upholding the verdict. Therefore, I will not disturb the jury verdict in any way.[11]

### III. CONCLUSION

For the foregoing reasons, the Court will deny the motion of plaintiff to amend or alter the jury verdict and, in the alternative, to grant a new trial.

### *ORDER*

**AND NOW**, on this 14th day of January, 1997, upon consideration of the motion of plaintiff Benjamin Nissim to amend the jury verdict or for a new trial pursuant to Federal Rule of Civil Procedure 59 (Document No. 75), and response thereto, and the motion of plaintiff Benjamin Nissim to be excused of its obligation to provide a transcript of the trial

under Local Rule 7.1(e) (Document No. 78), and response thereto, for the reasons set forth in the accompanying memorandum, it is hereby **ORDERED** that

1. The motion of plaintiff Benjamin Nissim to amend the jury verdict or to have a new trial is **DENIED**.

2. The motion of plaintiff Benjamin Nissim to be excused of his obligation to provide a transcript or partial transcript of the trial is **GRANTED WITHOUT PREJUDICE** to the right of defendant McNeil Consumer Products Company, Inc. or the Court to require that plaintiff provide a transcript if further proceedings are pursued by plaintiff.

---

**11.** Accordingly, the plaintiff's alternative motion and argument for a new trial is rejected.