### Lori D. RHOADS

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, in its Capacity as Receiver for Standard Federal Savings Bank and Standard Federal Savings Association**

No. CIV.A. CCB–94–1548.

United States District Court, D. Maryland.

Sept. 30, 2003.

---

**15.** This is not a case where a dispositive affirmative defense is raised only after the statute of limitations has run.

## *MEMORANDUM*

BLAKE, District Judge.

The facts of this case have been recited in previous opinions, which are incorporated herein by reference. *See Rhoads v. F.D.I.C.*, 257 F.3d 373 (4th Cir.2001); *Rhoads v. F.D.I.C.*, No. CCB–94–1548, 2002 WL 31755427 (D.Md. Nov.7, 2002). Now pending before the court are the following post-trial motions: (1) motions by defendant Federal Deposit Insurance Corporation ("defendant" or "FDIC") for judgment as a matter of law after trial and to vacate verdict or for a new trial, and for a stay of enforcement of judgment; (2) motion by FDIC for judgment as a matter of law at the close of the evidence; (3) motions by plaintiff Lori D. Rhoads ("plaintiff" or "Rhoads") for attorney's fees, prejudgment interest, and costs; and (4) motion by Fred S. Sommer and Shulman, Rogers, Gandal, Pordy & Ecker (collectively "former counsel" or "movants") to intervene in the present case.

I. *Motions for judgment as a matter of law and to vacate verdict or for a new trial, and for a stay of enforcement of judgment*

 The gravamen of FDIC's motions for judgment as a matter of law after trial and to vacate verdict or for new trial is that the court erroneously submitted the case to the jury. (Def.'s Mem. in Supp. of Mot. for J. as a Matter of Law After Trial at 2–3.) The court ruled before the trial commenced that compensatory damages were available to Rhoads on her Americans with Disabilities Act ("ADA") retaliation claim. *See Rhoads*, No. CCB–94–1548, 2002 WL 31755427, at *1–2. At the close of all the evidence at trial, however, the FDIC moved for judgment as a matter of law on the issue of compensatory damages on the grounds that Rhoads did not present any evidence whatsoever supporting her claim for such damages. (*See* Def.'s Mem. in Supp. of Mot. for J. as a Matter of Law at the Close of the Evidence at 5–7.) The court agreed with the FDIC and, hence, granted its motion on this basis.[1] The jury subsequently found that Rhoads proved "by a preponderance of the evidence that the reasons given by the FDIC for her termination were false and that retaliation for her protected conduct under the ADA was the true reason for that termination" and awarded her $120,006 in back pay. (Verdict Form.) The defendant contends that the court should have withdrawn the case from the jury because the only relief available to the plaintiff, given the court's ruling, was back pay, an equitable remedy. (Def.'s Mem. in Supp. of Mot. for J. as a Matter of Law

After Trial at 2–3.) For the reasons that follow, the court will deny the defendant's motions for judgment as a matter of law after trial and to vacate verdict or for a new trial.

 The court first notes that, in light of a recent Supreme Court opinion, it is not entirely clear whether back pay is a legal or equitable remedy. Although courts in this circuit commonly have regarded back pay in Title VII or ADA suits as an equitable remedy, *see, e.g., Ford v. Rigidply Rafters, Inc.,* 984 F.Supp. 386, 392 (D.Md.1997), the Supreme Court of the United States recently reasoned that:

> Congress "treated [backpay] as equitable" in Title VII [opinion of GINSBURG, J.], only in the narrow sense that it allowed backpay to be awarded *together with* equitable relief:
>
> > "[T]he court may ... order such affirmative action as may be appropriate, which may include, but is not limited to, *reinstatement or hiring of employees, with or without back pay* ..., or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e–5(g)(1) (1994 ed.) (emphasis added).
>
> If the referent of "other equitable relief" were "back pay," it could be said, in a sense relevant here, that Congress "treated" backpay as equitable relief. In fact, however, the referent is "reinstatement or hiring of employees," which is modified by the phrase "with or without back pay."

*Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 218 n. 4, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002).[2] Lower

---

1. The FDIC also moved for judgment as a matter of law at the close of the evidence on the grounds that the plaintiff failed to introduce substantial evidence establishing a causal link between the adverse employment action and the protected activity, and that there is no substantial evidence supporting the plaintiff's retaliation claim. (Def.'s Mem. in

Supp. of Mot. for J. as a Matter of Law at the Close of the Evidence at 1–5.) The court reserved rulings on these two arguments; they will be resolved in this Memorandum and Order.

2. The ADA borrows remedies from Title VII for retaliation claims in the employment con-

courts have understood that *Great–West Life* "denied that back pay is a form of equitable relief, stating instead that back pay may be 'made part of an equitable remedy' that includes the hiring or reinstatement of employees, but is not an equitable remedy in itself." *Kishter v. Principal Life Ins. Co.*, 186 F.Supp.2d 438, 445 (S.D.N.Y.2002) (quoting *Great–West Life*, 534 U.S. at 218 n. 4, 122 S.Ct. 708). The Court's statements in *Great–West Life* are admittedly dicta, and the Fourth Circuit has not yet assessed their import. Nevertheless, if back pay under Title VII is properly considered a legal remedy, Rhoads was guaranteed a right to trial by jury, defeating the defendant's motions.

Even if back pay is rightly regarded as an equitable remedy, the court holds that the FDIC impliedly consented to have the jury decide the issue of back pay. In Title VII and ADA cases where numerous types of monetary relief are sought, juries frequently determine back pay awards. *See, e.g., Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 540 (4th Cir.2003). In the instant case, Rhoads specifically sought a jury trial on "all counts." (Compl. at 22.) Although the FDIC asserted that Rhoads was not entitled to a jury trial at all (*see* Def.'s Mem. in Supp. of Mot. for Summ. J. and to Strike Pl.'s Jury Demand at 15–16), it never specifically objected to having the jury decide the issue of back pay; in other words, after the court ruled that compensatory damages were available to Rhoads and that she had a right to a jury trial, the defendant did not object to having the jury decide the issue of back pay. Indeed, the defendant

proposed a jury instruction on the issue of back pay, strongly evidencing its expectation that the jury would decide the issue. (*See* Def.'s Proposed Jury Instructions at 14) ("If you decide to award the Plaintiff damages, you may award back pay based on the evidence introduced at trial, to compensate the Plaintiff justly and fairly for a financial loss as a result of her termination."). In light of the foregoing, the court holds that the FDIC impliedly consented to have the jury decide the issue of back pay.[3] *Cf. Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 501 (7th Cir.2000) (holding, in an ADA case, that a party's failure to object to the opponent's jury demand as to all issues amounted to implied consent to have the jury award back pay); *Nissim v. McNeil Consumer Prods. Co.*, 957 F.Supp. 600, 602 n. 5 (E.D.Pa.1997) (concluding that "both parties ... consented to the submission of the back pay award to the jury" because "plaintiff's own proposed jury instructions included directions for determining the amount of back pay damages"); *Knight v. Georgetown Univ.*, 725 A.2d 472, 483–85 (D.C.1999) (suggesting without deciding that a party which proposed jury instructions on the issue of promissory estoppel and waited until the end of all the evidence to move for a court ruling effectively waived any right it may have had to a decision by the bench).

■ Given that the issue was properly presented to the jury, the court declines to disturb the jury's verdict and back pay award. As the Fourth Circuit recently explained:

---

text. *See* 42 U.S.C. §§ 12203, 12117, 2000e–5. The Court's discussion of back pay in Title VII actions pursuant to 42 U.S.C. § 2000e–5(g)(1), then, is directly applicable to this case.

**3.** *Troy v. City of Hampton*, 756 F.2d 1000 (4th Cir.1985), which held that conducting a jury

trial in a Veterans Reemployment Rights Act case was reversible error, is distinguishable in that "the clear intent of Congress [was] that suits under [that statute] should be handled nonjury." *Id.* at 1003. Cases such as *Bryant* that uphold jury awards of back pay show that there is no such clear intent with respect to suits under Title VII and the ADA.

Under Fed.R.Civ.P. 50(b), the question is whether a jury, viewing the evidence in the light most favorable to [the prevailing party], could have properly reached the conclusion reached by this jury. If reasonable minds could differ about the result in this case, [the court] must affirm the jury's verdict.

*Bryant,* 333 F.3d at 543 (internal quotations and citations omitted); *see also Ocheltree v. Scollon Prods., Inc.,* 335 F.3d 325, 331 (4th Cir.2003) ("We view the evidence ... in the light most favorable to ... the nonmovant, drawing all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility. Judgment as a matter of law is proper only if there can be but one reasonable conclusion as to the verdict.") (internal quotations and citations omitted). That demanding standard is not met here because sufficient evidence supported the jury's conclusions.[4]

■ Of the many facts presented by Rhoads at trial, the following are the most significant: (1) Rhoads consulted with an attorney in order to determine whether she had legal recourse against her former employer for violations of its smoke-free work environment policies; (2) on or about August 18, 1993, Rhoads informed supervisors, including W. Marshall Jones, that she had consulted with an attorney; (3) Jones purportedly responded that Rhoads would regret her decision to meet with a lawyer; (4) Rhoads's employment was terminated on or about September 15, 1993; (5) Jones played some part in the decision to terminate Rhoads; (6) soon after Rhoads and her attorney began corresponding with her former employer, phrasing her complaints in legal terms, she was fired; and (7) although company policy allowed termi-

nation after ten or more days of unexcused absence, her former supervisors initiated termination proceedings before she accumulated ten such absences.

■ To succeed on an ADA retaliation claim, a plaintiff "must either offer sufficient direct and indirect evidence of retaliation, or proceed under a burden-shifting method." *Rhoads,* 257 F.3d at 391. Under the latter approach, the plaintiff must first show that: "(1) she engaged in a protected activity; (2) her employer acted adversely against her; and (3) her protected activity was causally connected to her employer's adverse action." *Id.* at 392. The employer "then has the burden to rebut the presumption of retaliation by articulating a legitimate, nonretaliatory reason for its actions. If the employer does so, the plaintiff must demonstrate that the proffered reason is a pre-text for forbidden retaliation." *Id.* (internal quotations and citations omitted); *see also Bryant,* 333 F.3d at 543 ("It is then up to the jury to decide whether the adverse action was actually taken for the proffered reason, or if it was intended as a retaliatory measure."). The plaintiff retains at all times the ultimate burden of persuading the trier of fact that she was the victim of retaliation. *Rhoads,* 257 F.3d at 392.

The evidence conclusively established that Rhoads engaged in a protected activity, namely, consulting an attorney to determine her legal rights in connection with the violation of smoke-free work environment policies, and that her former employer acted adversely against her when it terminated her employment. The critical inquiry for the jury, then, was whether Rhoads carried her ultimate burden and proved by a preponderance of the evidence that her protected activi-

---

4. Similarly, the FDIC does not meet the standard for new trial under Federal Rule of Civil Procedure 59, which permits the court to "grant a new trial only if 1) the verdict is against the clear weight of the evidence, 2) is based on evidence which is false, or 3) will result in a miscarriage of justice." *Bryant,* 333 F.3d at 543 (internal quotations omitted).

ty was causally connected to her former employer's adverse action. Based solely on the record at trial, the court concludes that Rhoads presented sufficient evidence from which a reasonable jury could conclude that Rhoads met her burden. The direct evidence of retaliation, coupled with the circumstantial evidence (especially the closeness in time between Rhoads's announcement that she spoke with a lawyer and her termination, and the testimony that Rhoads's former employer initiated termination proceedings and drafted the notice of termination before the expiration of the requisite ten days), supports the jury's conclusion that Rhoads's termination was intended as a retaliatory measure. Because there was a legally sufficient evidentiary basis for the jury's verdict, the defendant's motions for judgment as a matter of law after trial and to vacate verdict or for a new trial will be denied. For the same reason, the court will also deny the remaining two arguments from the defendant's motion for judgment as a matter of law at the close of the evidence (*see supra* note 1).

Finally, the FDIC moves the court to stay enforcement of the money judgment against it pending its appeal to the Fourth Circuit. Pursuant to Rules 62(d) and (e) of the Federal Rules of Civil Procedure, the FDIC is entitled to a stay of enforcement of the money judgment, and no bond is required of the United States when it seeks a stay pending appeal. Fed.R.Civ.P. 62(d)-(e); *see also In re Trans World Airlines, Inc.,* 18 F.3d 208, 211–12, 215 (3d Cir.1994). Accordingly, the defendant's motion for a stay of enforcement of judgment will be granted.

## II. *Motions for attorney's fees, prejudgment interest, and costs*

Former counsel represented Rhoads through her first trial;[5] they withdrew their representation in 1998 because Rhoads apparently was delinquent in her payment of attorney's fees. (*See, e.g.,* Mem. in Supp. of Mot. to Intervene at 4.) Rhoads proceeded *pro se* at her appeal before the Fourth Circuit,[6] which reversed the district court's summary judgment for the defendant on her ADA retaliation claim, and at her second trial, where the jury found for Rhoads on the ADA retaliation claim and awarded her $120,006 in back pay. (*Id.* at 4, 6.)

In March 1998, Rhoads filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the Eastern District of Virginia. (Def.'s Opp. to Mot. to Intervene Ex. A.) Rhoads listed former counsel as a creditor holding an unsecured nonpriority claim in the amount of $190,000 for legal services. (*Id.* Ex. A at Schedule F.) Rhoads also disclosed on her petition's statement of financial affairs that she was a party to the instant litigation, described as a "[c]ivil claim for damages." (*Id.* Ex. A at Statement of Financial Affairs.) Former counsel was served with

---

5. Sommer represented Rhoads through his solo practice until June 1998; he continued his representation of Rhoads when he became a shareholder of Shulman, Rogers, Gandal, Pordy & Ecker at that time. (Mem. in Supp. of Mot. to Intervene at n. 1.)

6. The Georgetown Appellate Litigation Program wrote an *amicus curiae* brief on behalf of Rhoads, and the supervising attorney of the Program participated at the oral argument before the Fourth Circuit. *See Rhoads,* 257 F.3d at 376. In a brief submitted to the Circuit Court for Montgomery County, however, Rhoads insisted that she alone "argued to the [Fourth Circuit] that the employer's rush to terminate was *prima facie* evidence of retaliation." (*See* Def.'s Opp. to Pl.'s Request for Att'y's Fees Ex. B at 4 n. 3.) Rhoads specifically denied that *amicus* was responsible for obtaining reversal by the Fourth Circuit; in fact, Rhoads accused *amicus* of fraud. (*Id.* Ex. B at 5 n. 4.)

Rhoads's petition, and on July 2, 1998, the bankruptcy court granted a discharge under 11 U.S.C. § 727. (*Id.* Ex. A–B.) Nevertheless, on September 28, 1998, former counsel sent a "Notice of Attorney's Lien" to counsel for the FDIC, stating that, pursuant to "Maryland Code, Business and Professions Article, § 10–501 and Maryland Rule of Civil Procedure 2–652," they had "a lien on any judgment, award, or settlement" Rhoads may receive in connection with the instant litigation "in the amount of no less than (i) $159,729.74 or (ii) the amount of any attorney's fees awarded for legal services provided by the undersigned prior to August 28, 1998." (Mem. in Supp. of Mot. to Intervene Ex. B.)

On August 8, 2001, Rhoads, proceeding *pro se*, sued former counsel in the Circuit Court for Montgomery County alleging legal malpractice. (Def.'s Opp. to Pl.'s Request for Att'y's Fees Ex. A.) In her complaint, Rhoads discusses the attorney's lien filed against her by former counsel (*id.* Ex. A at ¶ 34) and prays the court for a judgment that includes "[r]ecovery of fees paid to [former counsel] and dismissal of [their] lien." (*Id.* Ex. A at 14.)

 In her motion before this court, Rhoads seeks attorney's fees based on her own *pro se* representation and former counsel's representation. She also seeks litigation expenses. (Pl.'s Mem. in Supp. of Att'y's Fees at 2–5.) As Rhoads herself admits, *pro se* litigants are not entitled to attorney's fees authorized by a fee-shifting statute. (*Id.* at 2); *see also*

*Bond v. Blum,* 317 F.3d 385, 398–99 (4th Cir.2003). Plaintiff's motion seeking fees related to her own *pro se* representation, therefore, will be denied.

 As for the representation by Rhoads's former counsel, a prevailing plaintiff in an ADA action is generally entitled to recover fees paid to an attorney unless special circumstances render such an award unjust. *Mammano v. Pittston Co.,* 792 F.2d 1242, 1244 (4th Cir.1986); *see also* 42 U.S.C. § 12205. The first determination to be made by the district court is whether the plaintiff is a prevailing party. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The second determination is whether an award of attorney's fees should be granted to the prevailing party and what amount would be reasonable under the specific circumstances of the case; the district court has significant discretion in determining the amount of a statutory fee award. *Id.* at 433, 437, 103 S.Ct. 1933. It is important to be mindful of the purpose of fee-shifting statutes: " 'to enable potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights.' " *Bond,* 317 F.3d at 399 (quoting *Kay v. Ehrler,* 499 U.S. 432, 436, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991)).

 There seems to be no dispute that Rhoads is a prevailing party within the meaning of 42 U.S.C. § 12205. The determination to be made by the court, then, is whether an award of attorney's fees should be granted to Rhoads for her former counsel's work in the case.[7] Im-

---

7. Although the court holds that Rhoads is not entitled to any fees for her former counsel's services in this case, it should be noted that, even if she were entitled to fees generally, the amount would be very small. First, the prevailing party is not entitled to fees incurred in pursuing unsuccessful claims. *See, e.g., Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Of the approximately ten original claims, only one was ulti-

mately successful. In addition, because former counsel withdrew their representation before Rhoads prevailed at the Fourth Circuit and second trial, they would need to establish that their efforts, and not those of Rhoads or *amicus*, produced the final judgment in favor of Rhoads. Former counsel excerpted only one paragraph from an opposition brief they drafted on Rhoads's behalf and one para-

portantly, any entitlement to attorney's fees belongs to Rhoads alone. *See, e.g., Brown v. Gen. Motors Corp.*, 722 F.2d 1009, 1011 (2d Cir.1983) ("[I]t is the prevailing party rather than the lawyer who is entitled to attorney's fees."). As stated by the court in *Brown*, the "entitlement of an attorney to fees depends upon the contractual arrangement between the attorney and the client. The parties to these arrangements may well take into account the possibility of a court award of fees where statutory authority . . . exists but a claim for such an award must itself be made by the party rather than the attorney." *Id.*[8] The court is aware of no contractual arrangement between Rhoads and her former counsel whereby Rhoads assigned or otherwise negotiated her entitlement to statutory attorney's fees to her former counsel.[9] Accordingly, any entitlement to attorney's fees belongs to Rhoads alone as the prevailing party.

In a case involving a statutory fee award to withdrawn counsel, the Fourth Circuit stated that the "issue, simply, is whether services were performed which contributed to claimant's success in the lawsuit." *Mammano*, 792 F.2d at 1245. Although former counsel vehemently dispute her contentions, Rhoads has repeatedly asserted, in court documents, that she alone raised the argument upon which the Fourth Circuit reversed the district court's summary judgment on her ADA retaliation claim (*see, e.g.,* Def.'s Opp. to Pl.'s Request for Att'y's Fees Ex. B at 4–5; *id.* Ex. A ¶ 39), and representations made in the course of litigation are binding on the parties that make them, *see, e.g., Hagan v. McNallen (In re: McNallen )*, 62 F.3d 619, 625 (4th Cir.1995); *Major v. CSX Transp., Inc.*, 170 F.Supp.2d 563, 567 (D.Md.2001). Because any entitlement to attorney's fees belongs to Rhoads alone, and given her own statements that former counsel performed no services which contributed to the ultimate success of the litigation, Rhoads is not entitled to receive attorney's fees for any work performed by her former counsel. *See Ward v. Tipton County Sheriff Dep't*, 937 F.Supp. 791, 801 (S.D.Ind.1996) (denying attorney's fees under Title VII for the work of the prevailing party's former counsel when there was no evidence that former counsel were responsible for the litigation's success or that the prevailing party was obligated to pay fees to them)

Even if the court were to disregard Rhoads's contentions that her former counsel did nothing to contribute to the suit's ultimate success, it cannot ignore the myriad statements she has made in court documents regarding her former counsel's competence. (*See, e.g.,* Def.'s Opp. to Pl.'s

---

graph from the Fourth Circuit's opinion in an effort to establish this causal link. (*See* Mem. in Supp. of Mot. to Intervene at 4–5 & n. 3.) The court assumes, without deciding, that the movants did not establish this link on the present record.

**8.** According to former counsel, they have standing to assert a direct claim for attorney's fees because Rhoads requested fees "on [their] behalf." (Mem. in Supp. of Mot. to Intervene at 8 (internal quotations and citations omitted); *see also id.* Ex. D.) The court doubts former counsel have standing, *see, e.g., Bandera v. City of Quincy*, 220 F.Supp.2d 26, 43–45 (D.Mass.2002); although Rhoads seeks

attorney's fees representing her former counsel's work, she does not state that her former lawyers are entitled to those fees. The court also notes that Rhoads declined her former counsel's invitation to assist her in connection with her motion for attorney's fees. (Mem. in Supp. of Mot. to Intervene at 6 n. 4, Ex. D.)

**9.** Rhoads and her former counsel have mentioned that their fee arrangement provides for a "guaranteed fee" and a "contingent premium;" they do not state, however, that their fee arrangement addresses entitlements to statutory attorney's fees. (*See, e.g.,* Mem. in Supp. of Mot. to Intervene at 3 n. 2.)

Request for Att'y's Fees Ex. A ¶¶ 14–40; *id.* Ex. B at 2–6.) In determining an award of attorney's fees, the district court must consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974), many of which bear on the issue of counsel's competence and performance in the lawsuit. *See id.* (identifying factors such as the ability of the attorneys and the skill requisite to perform the legal services properly). Although the court takes no position whatsoever on the merits of Rhoads's allegations, given her admissions that former counsel were negligent in the litigation of her case, the court has no choice but to value their work at zero for purposes of this motion. *Cf. Hagan,* 62 F.3d at 625 (refusing to consider issues that a party's trial counsel "conceded" before the lower court); *Major,* 170 F.Supp.2d at 567 (treating statements in a party's interrogatory answers as "a legal conclusion in the nature of a stipulation excusing the need to produce evidence"). Mindful that the purpose of awarding attorney's fees is to enable plaintiffs to retain "competent counsel," the court simply cannot order the defendant to pay for the fees of former counsel whom the prevailing party herself has repeatedly characterized as incompetent.

 Finally, the court notes that, although an award of attorney's fees may be the norm, no fees should be awarded if it would be unjust. *Mammano,* 792 F.2d at 1244. If Rhoads's malpractice suit against former counsel is successful, she will be eligible to recoup all of the attorney's fees she paid to them. It could be a windfall, then, to award her attorney's fees when she is simultaneously pursuing a judgment for attorney's fees in another forum. In addition, while the court in no way renders any opinion regarding the

effect of the bankruptcy court's discharge on the former counsel's attorney's lien, Rhoads herself has proffered that she owes nothing to her former counsel as a result of the discharge. (*See, e.g.,* Def.'s Opp. to Pl.'s Request for Att'y's Fees Ex. B at 4; Pl.'s Reply to Def.'s Opp. for Att'y's Fees at 2.) If that is the case, it would be manifestly unjust to award her attorney's fees to cover expenses that already have been discharged. For all of the foregoing reasons, Rhoads's motion for attorney's fees for the work of her former counsel will be denied.

 Rhoads also seeks litigation expenses incurred during the course of her own *pro se* representation and her former counsel's representation. (Pl.'s Mem. in Supp. of Attorney's Fees at 4–5.) Litigation expenses pursuant to fee-shifting statutes, distinct from costs recoverable under 28 U.S.C. § 1920, cover out-of-pocket expenses incurred by attorneys in the course of providing legal services, such as copying costs and travel expenses. *See, e.g., Brown v. Gray,* 227 F.3d 1278, 1297–98 (10th Cir.2000); *Daly v. Hill,* 790 F.2d 1071, 1084 n. 18 (4th Cir.1986). Since *pro se* litigants are not entitled to fee awards authorized by fee-shifting statutes, *Bond,* 317 F.3d at 398–99, they also cannot recover attorney litigation expenses. *See, e.g., Clarke v. Parkinson,* 225 F.Supp.2d 345, 355 (S.D.N.Y.2002) ("Where an individual litigant elects to undertake legal research, or factual research, or other case-related tasks, even in order to save counsel fees, the litigant should not expect to have the costs of his or her efforts included in any determination of litigation expenses."). In addition, given the court's earlier holding that Rhoads is not entitled to attorney's fees for her former counsel's work, she is similarly not entitled to litigation expenses incurred by them. Rhoads's motion for litigation expenses, therefore, will be denied.[10]

---

**10.** Her Bill of Costs, opposed by the FDIC, will be dealt with at the appropriate time by

Finally, Rhoads seeks prejudgment interest on her back pay award. In support of her motion, Rhoads submits that the "sue and be sued" language in the FDIC's enabling legislation defeats the defendant's assertion of sovereign immunity. (*See, e.g.*, Pl.'s Mem. in Supp. of Prejudgment Interest at 2–3.) As recently stated by the Fourth Circuit, however, a "waiver of sovereign immunity does not permit an award of interest against the government unless that waiver expressly extends to interest." *G ex rel. Ssgt RG v. Fort Bragg Dependent Schs.*, 324 F.3d 240, 256 (4th Cir.2003); *see also Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied. Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign.") (internal citations omitted). Because there is no specific waiver of the FDIC's sovereign immunity extending to interest awards, *see Battista v. F.D.I.C.*, 195 F.3d 1113, 1120 (9th Cir.1999), the court will deny Rhoads's motion for prejudgment interest.

### III. *Motion to intervene*

Rhoads's former counsel move to intervene in the present action, asserting two interests in the lawsuit: (1) "an interest in any attorney's fee awarded to Rhoads for [former counsel's] work"; and (2) "an interest in any final judgment entered by this Court, by virtue of the Attorney's Lien." (Mem. in Supp. of Mot. to Intervene at 7–8.) Given the court's ruling that Rhoads is not entitled to any statutory attorney's fees for her former counsel's work, the movants' first proffered interest is moot. *Cf. Bandera v. City of Quincy*, 220 F.Supp.2d 26, 43–45 (D.Mass.2002)

the Clerk of Court. If necessary, I will resolve any remaining disputes. *See, e.g.,*

(holding that a former attorney did not have a direct interest in statutory attorney's fees in a Title VII action).

Regarding the second purported interest, the attorney's lien, the court further notes that such an interest appears very much in dispute. The plain language of section 10–501 of the Maryland Code, Business Occupations and Professions Article, reveals that a lien attaches "only if, and to the extent that ... the client owes the attorney ... compensation for legal services *that produced the settlement, judgment, or award.*" Md.Code Ann., Bus. Occ. & Prof., § 10–501 (2003) (emphasis added). In other words, the movants apparently must demonstrate that their services produced the money judgment in order for the lien to attach; as discussed, Rhoads disputes that the former counsel's work contributed to the litigation's success. Further, the former counsel seemingly also must establish that the bankruptcy court's discharge did not extinguish their lien. Given the uncertainties surrounding the former counsel's attorney's lien, the court will not permit intervention on this basis. Finally, it is unlikely that this court has jurisdiction over an action to execute under an attorney's lien. *See* Md.Code Ann., Bus. Occ. & Prof., § 10–501(d); Md. R. Civ. P. 2–652(c) (2003) (stating that an attorney may bring an action for execution under an attorney's lien only in a Maryland circuit court); *Vangrack, Axelson & Williamowsky, P.C. v. Estate of Abbasi*, 261 F.Supp.2d 352, 362–63 (D.Md.2003). To the extent that such an action must proceed in a Maryland circuit court (and, indeed, such an action between Rhoads and her former counsel is currently pending in the Circuit Court for Montgomery County), the court's disposition of the instant motions cannot impair or impede any

*Schmitz–Werke GmbH Co. v. Rockland Indus., Inc.*, 271 F.Supp.2d. 734, 735 (D.Md.2003).

interest former counsel may have by way of their attorney's lien. The former counsel's motion to intervene, thus, will be denied.

A separate Order follows.

### *ORDER*

For the reasons stated in the accompanying Memorandum, it is hereby Ordered that:

1. defendant FDIC's motion for judgment as a matter of law at the close of the evidence (Docket No. 172) is **DENIED;**

2. defendant FDIC's motion for judgment as a matter of law after trial and to vacate verdict or for a new trial (Docket No. 173) is **DENIED;**

3. defendant FDIC's motion for stay of enforcement of judgment (Docket No. 174) is **GRANTED;**

4. plaintiff Rhoads's motion for prejudgment interest (Docket No. 177) is **DENIED;**

5. plaintiff Rhoads's motion for attorney's fees (Docket No. 178) is **DENIED;**

6. movants Fred S. Sommer's and Shulman, Rogers, Gandal, Pordy & Ecker's motion to intervene (Docket No. 190) is **DENIED;** and

7. copies of this Order and the accompanying Memorandum shall be sent to Ms. Rhoads and counsel of record, including counsel for the proposed intervenors.