931 A.2d 508

**Lori Denise RHOADS**

v.

**Fred S. SOMMER, et al.**

**No. 127 Sept. Term, 2006.**

Court of Appeals of Maryland.

Aug. 27, 2007.

Reconsideration Denied Oct. 3, 2007.

See also 257 F.3d 373, 286 F.Supp. 2d 532.

Matthew H. Simmons (Seann P. Malloy of Simmons & Associates Chartered, on brief) of Bethesda, for petitioner.

Sandy David Baron (Fred S. Sommer of Shulman, Rogers, Gandal, Pordy & Ecker, P.A., on brief) of Rockville, for respondents.

BELL, C.J., RAKER,*CATHELL, HARRELL, BATTAGLIA, GREENE, and WILNER, ALAN, M. (Retired, specially assigned), JJ.

RAKER, J.

Respondents Fred S. Sommer, an attorney, and Shulman, Rogers, Gandal, Pordy & Ecker, P.A., his law firm, (collectively referred to in the singular as "Sommer") filed a complaint to enforce an attorney's lien against Lori D. Rhoads, petitioner. We granted certiorari to consider three questions. *Rhoads v. Sommer,* 396 Md. 524, 914 A.2d 768 (2007). First, we consider whether respondents' right to a statutory attorney's lien, as set forth in Md.Code (1999, 2006 Cum.Supp.), § 10–501 of the Business Occupations & Professions Article, was waived by the language of the parties' retainer agreement.[1] We shall hold that the retainer agreement did not waive respondents' right to a statutory attorney's lien under § 10–501. Second, we consider whether a § 10–501 attorney's lien survives a bankruptcy discharge even if no notice of the intent to claim a lien was given prior to the bankruptcy. We shall hold that the § 10–501 lien survives the bankruptcy discharge and that Sommer properly gave notice of the lien under Maryland Rule 2–652. Finally, we consider whether petitioner's constitutional due process rights were violated.

---

\* Cathell, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he participated also in the decision and adoption of this opinion.

**1.** All subsequent statutory references herein shall be to the Business Occupations & Professions Article, Md.Code (1999, 2006 Cum.Supp.), unless otherwise indicated.

We shall hold that petitioner did not suffer any due process violations.

## I.

Rhoads, a financial analyst, began work for Standard Federal Savings Bank (SFSB) in September of 1987.[2] Rhoads was terminated from her position as Director of Financial Analysis at Standard Federal Savings Association (SFSA), the successor to SFSB, on September 15, 1993. In December 1993, Rhoads initiated a charge of discrimination with the Federal Equal Employment Opportunity Commission (EEOC) and the Maryland Commission on Human Rights, asserting that she was wrongfully discharged.

In January 1994, Rhoads retained Sommer[3] to file an employment discrimination lawsuit against her former employers, SFSB and its successor SFSA.[4] Sommer filed a federal suit on behalf of Rhoads alleging violations of the Family and Medical Leave Act, 29 U.S.C. §§ 2601–2654 (2000) (FMLA), the employment provisions of the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12117, 12203 (2000) (ADA), the common-law duty to provide a safe workplace, and the county human rights law arising from Rhoads' exposure to second-hand smoke in her workplace and her employer's allegedly retaliatory termination after she threatened to file an ADA discrimination claim. *See Rhoads v. F.D.I.C.*, 257 F.3d 373, 377–79 (4th Cir.2001).

---

**2.** The facts of this case have been recited in several other opinions. *See Rhoads v. F.D.I.C.*, 257 F.3d 373 (4th Cir.2001); *Rhoads v. F.D.I.C.*, 286 F.Supp.2d 532 (D.Md.2003); *Rhoads v. F.D.I. C.*, No. CCB–94–1548, 2002 WL 31755427 (D.Md. Nov.7, 2002). This opinion provides only those facts necessary for our consideration of the questions for which certiorari was granted.

**3.** Rhoads was briefly represented by another attorney before retaining Sommer.

**4.** Rhoads sued the Federal Deposit Insurance Corporation (FDIC) in its capacity as receiver for Standard Federal Savings Bank (SFSB) and Standard Federal Savings Association (SFSA).

In February 1997, the United States District Court for the District of Maryland granted summary judgment to the former employer on nine of Rhoads' ten claims including Rhoads' ADA claims—for failure to make reasonable accommodations, discriminatory termination, and retaliation—as well as the state law claims. *See Rhoads v. FDIC,* 956 F.Supp. 1239 (D.Md.1997). A jury subsequently found in the employer's favor on the remaining FMLA claim. *See Rhoads v. F.D.I.C.,* 257 F.3d at 376. Sommer filed various post-trial motions on Rhoads' behalf, including a motion for judgment as a matter of law or alternatively for a new trial.[5]

On March 27, 1998, Rhoads filed a voluntary petition for Chapter 7 bankruptcy. In her bankruptcy schedules, Rhoads listed Fred S. Sommer, Esq. as a creditor holding an unsecured nonpriority claim in the amount of $190,000 for legal services.[6] Sommer was individually identified as a creditor and was served with Rhoads' petition, but he did not file any response or other claim in the bankruptcy proceedings. Rhoads also disclosed on her petition's statement of financial affairs that she was party to a "[c]ivil claim for damages," which had resulted in a "judgment for defendant 3/4/96, time for appeal has not expired." Any action on the civil case, however, was automatically stayed when Rhoads filed the Chapter 7 bankruptcy petition.[7] *See* 11 U.S.C. § 362 (2000).

---

**5.** These post-trial motions, including a motion for judgment as a matter of law or alternatively for a new trial, were filed before Rhoads filed for bankruptcy. The motions were not decided until after Rhoads' bankruptcy filing was discharged.

**6.** Fred S. Sommer represented Rhoads as a sole practitioner until June 1998, and continued to represent Rhoads when he joined Shulman, Rogers, Gandal, Pordy, & Ecker, P.A. until he withdrew from the case after the first trial. Sommer's law firm, a respondent in this case, was not listed or referenced in Rhoads' bankruptcy schedules because Sommer was not associated with the firm at the time of the bankruptcy filing.

**7.** Rhoads' motion to stay the district court case was formally granted on April 20, 1998.

After reviewing Rhoads' petition, the bankruptcy trustee concluded there was "no property available for distribution from the estate." Based on this conclusion, the trustee filed a report of no distribution on May 8, 1998, releasing to Rhoads any interest she might have in the stayed litigation. On July 2, 1998, the bankruptcy court granted Rhoads a discharge under 11 U.S.C. § 727 (2000).

From April to August 1998, Rhoads and Sommer exchanged several letters concerning whether Sommer would continue to represent Rhoads. The correspondence began with Sommer asking whether Rhoads wanted him to file a reply brief or take some other action on her behalf regarding her motion for judgment as a matter of law and her motion for new trial, originally filed in March 1998 and now active again because the bankruptcy trustee relinquished her claim. Sommer stated that he was "willing to file a reply brief on the motion for new trial (and if the motion is granted, try the case)," but that he was "not willing to incorporate into the reply brief [Rhoads'] suggested revisions." In response, Rhoads asserted that the reply brief should "include all relevant arguments available to us" but that "it is preferable to have some response rather than no response at all." Thus, Sommer filed the reply brief on May 27, 1998. On August 12, 1998, the motions for judgment as a matter of law and motion for a new trial were denied. *See Rhoads v. F.D.I.C.*, 257 F.3d at 376.

Sommer discussed with Rhoads an appeal of the district court judgment. On August 14, 1998, Sommer wrote Rhoads that he was "willing to bring an appeal challenging the special verdict form used" to try the FMLA claim, and, pending further research, "*might* also be willing to challenge the district court's summary judgment ruling" dismissing the ADA claim and limiting the period of back pay. Sommer stated that he was "not willing to raise any other issues or arguments on appeal." In addition, Sommer proposed that Rhoads "would remain responsible for all unpaid fees and costs incurred to date and any future fees and costs, pursuant to the terms of our original fee agreement." Rhoads responded that "[b]efore being able to seriously consider your letter of

today, I must know whether you intend to sent [sic] the record straight on the malicious verbal and written attacks that have been perpetrated against me by the Defense." Rhoads also questioned, inter alia, whether a new retainer agreement would revive the debt that she believed had been discharged in bankruptcy. In response, Sommer stated that although he did "not intend to seek recovery from you of the unpaid attorney's fees and costs incurred prior to bankruptcy filing," he still had "a statutory lien for those fees and costs against any recovery you obtain in this case," and that this lien was not discharged in bankruptcy. Disagreements between Sommer and Rhoads continued. As a result, Sommer officially withdrew as Rhoads' attorney, effective August 29, 1998.

On September 28, 1998, Sommer sent notice of his attorney's lien to Rhoads and to counsel for the FDIC. Sommer stated that pursuant to § 10–501 and Md. Rule of Civil Procedure 2–652, he "has a lien on any judgment, award, or settlement" Rhoads may receive in connection with the instant litigation, *Rhoads v. FDIC,* Civil Action No. B–94–1548 (D.Md. 1998). Sommer asserted a right to "no less than (i) $159,729.74 or (ii) the amount of any attorney's fees awarded for legal services provided by Sommer prior to August 28, 1998."

On September 9, 1998, Rhoads filed notice that she was appealing the judgment of the district court. Rhoads proceeded with the appeal largely *pro se.* On July 12, 2001, the United States Court of Appeals for the Fourth Circuit reversed the District Court on one issue, holding that Rhoads had presented evidence sufficient to preclude a grant of summary judgment to the employer on Rhoads' retaliation claim under the ADA.[8] *See Rhoads,* 257 F.3d at 394. The

---

**8.** The United States Court of Appeals for the Fourth Circuit affirmed the District Court in every respect except for its award of summary judgment on the ADA retaliation claim. *Rhoads v. F.D.I.C.,* 257 F.3d at 394(4th Cir.2001), *cert. denied,* 535 U.S. 933, 122 S.Ct. 1309, 152 L.Ed.2d 219 (2002).

Fourth Circuit remanded the case for a new trial on that cause of action.[9]  *Id.*

Rhoads continued to represent herself during the second trial on her remaining retaliation claim under the ADA. In December 2002, more than four years after Sommer withdrew as Rhoads' attorney, a federal jury found that Rhoads proved " 'by a preponderance of the evidence that the reasons given by the FDIC for her termination were false and that retaliation for her protected conduct under the ADA was the true reason for that termination.' " *Rhoads v. FDIC.,* 286 F.Supp.2d 532, 537 (D.Md.2003) (quoting the Verdict Form). The jury awarded Rhoads damages of $120,006.  *Id.*

As a prevailing party in an ADA action, Rhoads then moved for an award of attorney's fees and costs.  *See* 42 U.S.C. § 12205 (2000); *see also Mammano v. Pittston Co.,* 792 F.2d 1242, 1244 (4th Cir.1986).  Rhoads requested a total award of $175,744.99, which included fees and expenses for legal work performed by her first attorney, Sommer, and herself.  In her memorandum in support of her claim for attorney's fees, Rhoads cited Sommer's "statutory lien in the amount of $159,729.74" and stated that she had already paid Sommer a total of $20,398.52.  Rhoads asserted that during the five years of Sommer's representation he billed "approximately 270 hours per year" and that "the number of hours Sommer expended on this case was, in all regards, reasonable."

In June 2003, Sommer moved to intervene for the limited purpose of being heard on the fee issue.  Sommer asserted two interests in the lawsuit: (1) an interest in any attorney's fee awarded to Rhoads for his work;  and (2) an interest in any final judgment entered by the court, by virtue of the attor-

---

**9.**  According to Rhoads, Sommer refused to pursue the ADA retaliation claim on appeal, while the FMLA arguments that Sommer advocated as grounds for appeal were rejected as contrary to the plain meaning of the statute.  Sommer disputes Rhoads' contentions, asserting that she prevailed by relying on theories and evidence that he developed in discovery, pleadings, and trial.

ney's lien. *See Rhoads,* 286 F.Supp.2d at 544. The FDIC responded by opposing Sommer's motion to intervene.

The federal district court denied Rhoads' claim for fees and costs and denied Sommer's motion to intervene. *Rhoads v. FDIC,* 286 F.Supp.2d at 543, 545. The district court agreed that Rhoads was a prevailing party, but considered several factors in determining whether an award of attorney's fees should be granted to Rhoads for her former counsel's work in the case. *Id.* at 543.

In its ruling, the federal district court first stated that any entitlement to attorney's fees belonged to Rhoads alone, rather than her attorney or former attorney. *Id.* at 542. The court then considered whether Sommer performed services that contributed to Rhoads' success in the lawsuit. Noting that Rhoads repeatedly asserted that her former counsel performed no services that contributed to the ultimate success of the litigation, the court concluded that Rhoads was not entitled to receive attorney's fees for any work performed by her former counsel.[10] *Id.* at 542–43. The court also concluded that since "the purpose of awarding attorney's fees is to enable plaintiffs to retain 'competent counsel,' " it would be improper to allow fees when Rhoads repeatedly characterized her former counsel as incompetent.[11] *Id.* at 543.

Even assuming that the district court were to allow fees, it pointed out that the fees allowed would be very small because "the prevailing party is not entitled to fees incurred in pursuing unsuccessful claims" and "[o]f the approximately ten original claims, only one was ultimately successful." *Id.* at 541 n. 7. Thus, due to Sommer's withdrawal "before Rhoads pre-

---

10. The district court noted that Sommer vehemently disputed Rhoads' contention that she alone raised the argument upon which the Fourth Circuit reversed the district court's summary judgment on her ADA retaliation claim. Nevertheless, the court relied upon the representations Rhoads made in the course of the litigation.

11. The court took "no position whatsoever on the merits of [Rhoads'] allegations," but stated that it had "no choice but to value [Sommer's] work at zero for purposes of this motion." *Rhoads v. FDIC,* 286 F.Supp.2d at 543.

vailed at the Fourth Circuit and second trial," Sommer "would need to establish that [his] efforts, and not those of Rhoads or *amicus,* produced the final judgment in favor of Rhoads." *Id.*

Finally, the court analyzed whether the award of fees would be unjust. The court noted that, shortly after the decision by the U.S. Court of Appeals for the Fourth Circuit, Rhoads filed a malpractice suit against Sommer in state court, praying for recovery of fees paid to Sommer and dismissal of his lien. *Id.* at 543. The federal district court acknowledged that if Rhoads' malpractice suit against former counsel is successful, she could potentially recoup all of the attorney's fees she paid to Sommer. *Id.* Thus, Rhoads could receive a windfall if she were to be awarded fees in both forums. *Id.*

Furthermore, the court noted that Rhoads herself proffered that she owes nothing to Sommer as a result of her bankruptcy discharge. The court did not opine on the effect of the bankruptcy court's discharge on Sommer's attorney's lien, but acknowledge that it "would be manifestly unjust to award her attorney's fees to cover expenses that already have been discharged." *Id.* For all of those reasons, the federal district court denied Rhoads' motion for attorney fees and, given that, determined that Sommer's interest in the fees was moot. *Id.* at 543, 544.

Sommer also asserted, in his motion to intervene, an interest in any final judgment entered by virtue of an attorney's lien. The court noted that Rhoads and her former counsel did not state that their fee arrangement addressed entitlement to a statutory attorney's lien. The court noted that the interest to the attorney's lien was in dispute, but concluded that it did not have jurisdiction over an action to execute a statutory attorney's lien. *Id.* at 544. Moreover, the court reasoned that its denial of fees would not impair or impede any interest Sommer may have by way of the attorney's lien. *Id.* Thus, the court denied Sommer's motion to intervene and made no holding regarding the statutory attorney's lien. Rhoads' second appeal to the Fourth Circuit was unsuccessful and the district court's judgment became final. *See Rhoads v. FDIC,*

286 F.Supp.2d at 545 (D.Md.2003), *aff'd*, 94 Fed.Appx. 187 (4th Cir.2000).

On December 20, 2004, Sommer filed a complaint in the Circuit Court for Montgomery County, seeking a declaration "that the attorney's lien is valid and enforceable against the" $120,006 judgment Rhoads obtained in the second federal district court trial, and asking the court to "enforce the attorney's lien against" that judgment. Sommer claimed a lien of $159,729.74, the same amount Sommer claimed when he gave notice to Rhoads and the FDIC after he withdrew as counsel in 1998. Along with the complaint, Sommer filed a motion for a temporary restraining order and preliminary injunction to ensure payment of his fees from any FDIC payment made to satisfy the judgment in favor of Rhoads. In response, the Circuit Court ordered the FDIC to pay $40,000 of the $120,000 judgment into the court registry.

Rhoads moved to dismiss Sommer's lawsuit. While that motion was pending, Sommer moved for summary judgment. After briefing and oral argument, the Circuit Court for Montgomery County granted judgment in favor of Rhoads, treating her motion to dismiss as one for summary judgment. The Circuit Court noted that "generally an attorney's lien is perfected upon the commencement of the representation. Therefore, such liens typically would not be extinguished in bankruptcy." The court concluded, however, that a plain reading of the retainer agreement led it to conclude that Sommer had waived his right to a statutory lien in the event that he did not obtain a judgment in favor of his client. The court held that Sommer agreed to forego his statutory lien rights by agreeing that, if his representation did not yield a judgment or settlement in Rhoads' favor, she would not be obligated to pay more than $500 per month toward the outstanding fee balance. The court noted that "in general [Sommer's] position is the correct one," and that "it is only because of the wording of this particular agreement that the court has concluded that [Sommer] waived his right to assert the lien and therefore, his claim was extinguished." Sommer filed a timely appeal to the Court of Special Appeals.

On October 31, 2006, the Court of Special Appeals reversed. *Sommer v. Rhoads,* 171 Md.App. 392, 910 A.2d 514 (2006). The Court of Special Appeals reviewed the parties' retainer agreement, Maryland attorney lien law, and bankruptcy law in its analysis. The court concluded that nothing in the retainer agreement could reasonably be interpreted to mean that Sommer waived his right to assert a lien after a loss in the first trial and his later withdrawal because no language in the agreement says or implies such a waiver. *Id.* at 407–08, 910 A.2d at 522–23. The court held also that the lien took effect upon the commencement of Sommer's services, was not lost by Sommer's failure to serve written notice under Md. Rule 2–652 before the bankruptcy petition, was not dependent on the viability of an *in personam* claim, and was not extinguished in the bankruptcy despite the fact that Sommer did not file proof of claim in bankruptcy. *Id.* at 408–17, 910 A.2d at 523–29. Furthermore, the court concluded that Rhoads' procedural due process rights were not violated. *Id.* at 419–29, 910 A.2d at 530–36. Rhoads filed a petition for writ of certiorari, which we granted. *Rhoads v. Sommer,* 396 Md. 524, 914 A.2d 768 (2007).

## II.

Rhoads and Sommer entered into a retainer agreement on January 31, 1994. The agreement provides for both a "guaranteed fee" and, in the event that Rhoads obtains a judgment or settlement in her favor, a "contingent premium." The agreement states, in pertinent part, as follows:

> *"**Guaranteed Fee.** Client will pay Attorney $100 per hour as a Guaranteed Fee for all hours worked. This Guaranteed Fee is payable regardless of whether a judgment or settlement is obtained in Client's favor. Attorney will obtain authorization from Client in any calendar month that he anticipates working in excess of 10 hours. Attorney has advised Client that, absent settlement, he anticipates it is very likely that he will be required to work in excess of 10 hours in many months.*

*"Contingent Premium.* In the event that Client obtains a judgment or settlement in her favor, Client will pay Attorney a Contingent Premium, *in addition to the Guaranteed Fee,* of $100 per hour for all hours worked. The Contingent Premium shall not result in total fees (i.e., the Guaranteed Fee and the Contingent Premium) exceeding 30 percent of the Total Recovery.

"The Total Recovery is the total amount recovered by settlement or judgment, including any amount recovered as interest, attorney's fees and punitive damages with respect to any claims brought or asserted on behalf of Client, whether brought or asserted separately or together, and whether brought or asserted in a lawsuit, a charge with an administrative agency (including Client's pending EEOC and Department of Labor charges) or informally."

With respect to the payment of fees and costs, the Agreement provides:

*"Monthly Payments.* Client will be billed monthly for all fees and costs incurred. Except for certain additional fee payments set forth below, Client will be required to pay within 30 days of the monthly bill:

"—Either the balance of the fees outstanding or $500 toward the outstanding balance, whichever is less, *plus*

"—all costs advanced by Attorney

"In addition to the $500 monthly installment toward fees, Client will also be required to pay on a monthly basis for all hours worked in excess of 25 in a calendar month, *provided* that Attorney has obtained authorization for Client from such hours . . . .

**"Payment Upon Receipt Of Judgment Or Settlement Proceeds Or Conclusion Of Case**

"Attorney will be entitled to payment of all fees and costs owed upon Client's receipt of the proceeds of a judgment or settlement upon the conclusion of any action brought by Attorney upon Client's behalf. If there is no judgment or settlement in favor of Client, Client will pay the outstanding balance to Attorney in $500 monthly installments.

\* \* \*

**"*Termination.* Attorney** may withdraw his representation of
Client if Client fails to pay any amount owed when due. In
such event, Client will remain responsible for all outstand-
ing charges, and such charges will become due and payable
immediately, or payable on a mutually acceptable payment
schedule to include interest at the prime rate.

"Attorney may withdraw his representation of Client for
any other reason, subject to any required court approval,
and upon reasonable notice. In such event, Client will
remain responsible for all outstanding charges in accordance
with the monthly payment schedule set forth above.

"Client may terminate Attorney's representation at any
time for any reason. In the event that Client does so,
Client will remain responsible for all outstanding charges,
and such charges will become due and payable immediately,
or payable on a mutually acceptable payment schedule to
include interest at the prime rate."

### III.

Before this court, petitioner argues that the Court of Spe-
cial Appeals erred by reversing the trial court's holding that
the plain language of the retainer agreement precludes pres-
ervation of an attorney's lien. Rhoads asserts that the lan-
guage of the agreement limits Sommer's right to assert a lien
under § 10–501 in the event of an unsuccessful conclusion to
the initial trial and, therefore, Sommer was limited to collect-
ing the outstanding attorney's fees in $500 monthly install-
ments from Rhoads *in personam.* Rhoads argues also that
the Court of Special Appeals erred in holding that Sommer
could assert an attorney's lien after Rhoads' bankruptcy dis-
charge and without pre-bankruptcy notice. Finally, Rhoads
contends that application of the attorney's lien statute is a
violation of her Constitutional due process rights.

Sommer responds that the parties' retainer agreement is
consistent with the attorney's lien statute, and that there was
no waiver of his statutory lien. Sommer asserts also that

Rhoads' discharge of her *in personam* debts does not affect Sommer's attorney's lien, which is an *in rem* claim created at the time the action began. Furthermore, Sommer asserts that notice of the lien is not required before a bankruptcy case is filed because the lien was already in existence and Md. Rule 2–652(b) governs only the enforcement or execution of the lien. Finally, Sommer contends that the attorney lien statute is constitutional and that its application in this case does not violate Rhoads' due process rights.

## IV.

Whether summary judgment was entered properly is a question of law, which we review *de novo*. *See River Walk v. Twigg*, 396 Md. 527, 541, 914 A.2d 770, 778 (2007). Maryland Rule 2–501 governs the entry of summary judgment and provides, in pertinent part, as follows:

> "The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law."

Md. Rule 2–501(f). We review the record in the light most favorable to the non-moving party and construe any reasonable inferences that may be drawn from the facts against the moving party. *Harford County v. Saks*, 399 Md. 73, 82, 923 A.2d 1, 6, (2007).

## V.

We first consider whether the language of the parties' retainer agreement waived Sommer's right to a statutory attorney's lien as set forth in Maryland Business Occupations & Professions Article § 10–501.[12] Section 10–501 provides, in pertinent part:

---

12. Attorney's liens are categorized as either a retaining lien or a charging lien. *See Ashman v. Shecter*, 196 Md. 168, 173–74, 76 A.2d 139, 141–42 (1950) (noting that a charging lien binds to a judgment recovered through the attorney's efforts, whereas a retaining lien is a

"(a) In general.—Subject to subsection (b) of this section, an attorney at law has a lien on:

"(1) a cause of action or proceeding of a client of the attorney at law from the time the cause of action arises or the proceeding begins; and

"(2) a settlement, judgment, or award that a client receives as a result of legal services that the attorney at law performs.

"(b) Limited fee agreement.—A lien under this section attaches only if, and to the extent that, under a specific agreement between an attorney at law and a client, the client owes the attorney at law a fee or other compensation for legal services that produced the settlement, judgment, or award....

"(d) Execution.—An attorney at law may retain property subject to a lien under this section and bring an action for execution under the lien only in accordance with rules that the Court of Appeals adopts."

To assert a lien under § 10–501, an attorney must follow the procedures set forth in Md. Rule 2–652(b). The rule states, in pertinent part, as follows:

"(b) **Statutory lien.** An attorney who has a lien under Code, Business Occupations and Professions Article, § 10–501, may assert the lien by serving a written notice by certified mail or personal delivery upon the client and upon each person against whom the lien is to be enforced. The notice shall claim the lien, state the attorney's interest in the action, proceeding, settlement, judgment, or award, and

---

general lien, dependent on possession, that gives an attorney the right to retain all papers, securities and money belonging to his client which comes into his possession until all his charges against his client are paid.). Under Maryland common law, attorneys do not have a charging lien, but a retaining lien is recognized. *See* Md. Rule 2–652(a); *Tucker v. Dudley,* 223 Md. 467, 472, 164 A.2d 891, 895 (1960). The charging lien has only been available in Maryland since 1985, when the General Assembly established a statutory attorney's lien. *See* 1985 Md. Laws, ch. 723; *Consolidated Construction v. Simpson,* 372 Md. 434, 460–61, 813 A.2d 260, 276 (2002).

inform the client or other person to hold any money payable or property passing to the client relating to the action, proceeding, settlement, judgment, or award.

"(c) **Adjudication of rights and lien disputes.** (1) When a circuit court action has been filed. If a lien asserted pursuant to this Rule relates to an action that has been filed in a circuit court of this State, on motion filed by the attorney, the attorney's client in the action, or any person who has received a notice pursuant to section (b) of this Rule, the court shall adjudicate the rights of the parties in relation to the lien, including the attorney's entitlement to a lien, any dispute as to the papers subject to a lien under section (a) of this Rule, and the amount of the attorney's claim.

"(2) When no circuit court action has been filed. If a lien is asserted pursuant to this Rule and a related action has not been filed in a circuit court of this State, the attorney, the attorney's client, or any person who has received a notice pursuant to section (b) of this Rule may file a complaint with a circuit court to adjudicate the rights of the parties in relation to the lien, including the attorney's entitlement to a lien, any dispute as to the papers subject to a lien under section (a) of this Rule, and the amount of the attorney's claim."

Maryland's statutory attorney's lien takes effect upon the commencement of representation. § 10–501(a) ("an attorney at law *has* a lien on: (1) a cause of action ... *from the time the cause of action arises or the proceeding begins")* (emphasis added). There is no question that Sommer represented Rhoads in the federal district court proceeding. Therefore, an inchoate statutory lien was effective from the time Sommer began his efforts on behalf of Rhoads.[13]

▮▮▮ Rhoads argues, however, that the language of the retainer agreement provides that Sommer waived his right to

---

13. See Part VI for a further discussion of this issue.

assert a lien if Rhoads lost at the first trial. Rhoads relies on the following language:

"Attorney will be entitled to payment of all fees and costs owed upon Client's receipt of the proceeds of a judgment or settlement upon the conclusion of any action brought by Attorney upon Client's behalf. If there is no judgment or settlement in favor of Client, Client will pay the outstanding balance to Attorney in $500 monthly installments."

Rhoads interprets "the conclusion of the action brought by the Attorney upon Client's behalf" to refer to the judgment entered in favor of the FDIC after the first district court trial. Thus, Rhoads interprets this portion of the agreement to mean that Sommer did not have a security interest, whether in the form of lien or otherwise, in what remained of Rhoads' cause of action because there was not a judgment or settlement in her favor at the conclusion of the initial trial. Therefore, Rhoads asserts, the agreement provides that Sommer was limited to collecting the $500 monthly payments from Rhoads *in personam*. Moreover, because the *in personam* debt was discharged in bankruptcy, Rhoads argues that Sommer has no remaining claim on the judgment in her favor.

■ We disagree with Rhoads' reading of the retainer agreement. As we have often stated, Maryland adheres to the objective interpretation of contracts; because the agreement is clear and unambiguous, we give effect to its plain meaning. *See, e.g., Cochran v. Norkunas,* 398 Md. 1, 16–17, 919 A.2d 700, 709–710, (2007); *Slice v. Carozza Properties, Inc.,* 215 Md. 357, 368, 137 A.2d 687, 693 (1958). Nothing in the language of the agreement can reasonably be interpreted to mean that Sommer waived his right to assert a lien if Rhoads did not win at the first trial. First, the agreement makes no mention of a waiver of the right to assert a lien; in fact, it makes no mention of a lien at all. We do not presume that the contract intended to waive a statutory right when there is no waiver in the language of the agreement. Furthermore, nothing in § 10–501 or Md. Rule 2–652 requires that a retainer agreement note the right to an attorney's lien, and such requirement will not be inferred. Maryland's statutory attor-

ney's lien takes effect upon the commencement of representation regardless of whether the right to an attorney's lien is addressed in the parties' retainer agreement.

Second, the Party's agreement at no point refers merely to the initial trial, or a judgment or settlement from the initial trial. Instead, the agreement consistently uses language such as "in the event that Client obtains a judgment or settlement in her favor" and "Client's receipt of the proceeds of a judgment or settlement upon the *conclusion of any action brought* by Attorney upon Client's behalf."[14] (emphasis added). The plain meaning of this language is that it refers to any judgment or settlement that results at the final conclusion of the lawsuit that Sommer filed in district court on Rhoads' behalf in 1994, not merely the conclusion of the initial trial where judgment was entered in favor of the FDIC. Indeed, the 1994 action was concluded in 2004 when Rhoads' second appeal to the United States Court of Appeals for the Fourth Circuit was unsuccessful, not when Rhoads lost her initial district court trial. We note also that the language in the retainer agreement corresponds with the language in § 10–501(a), which states that an attorney at law has a lien on "a settlement, judgment, or award that a client receives as a result of legal services that the attorney at law performs."[15] § 10–501(a)(2). The language of § 10–501(a)(2) makes clear that an attorney may claim a lien on legal services performed—at any time throughout the action—so long as there is a judgment, settlement, or other award.

Finally, we agree with the Court of Special Appeals that the Circuit Court relied improperly on the clause regarding the

---

**14.** The latter portion of this language is located in a paragraph in the retainer agreement entitled, "Payment Upon Receipt Of Judgment Or Settlement Proceeds Or Conclusion Of Case." The plain meaning of this heading also refers to the conclusion of the action as a whole, not merely the initial trial.

**15.** Rhoads' judgment partially was a result of the legal services performed by Sommer, as he filed the initial claims in the case. The issue of how much Sommer's work directly contributed to the final judgment is not before us and therefore we do not address this issue.

$500 per month payment schedule. The agreement states, "[i]f there is no judgment or settlement in favor of Client, Client will pay the outstanding balance to Attorney in $500 monthly installments." The Circuit Court interpreted this language only in the context of the first trial and concluded that, because judgment was entered initially for the FDIC, Rhoads' was relieved of any obligation to pay the entire sum outstanding in the event she obtained a judgment in her favor at some future date upon a retrial. We disagree for several reasons.

As we have noted, the judgment in favor of the FDIC at the district court was not the conclusion of the action. Because there was a judgment in Rhoads' favor, this language is not applicable. In no way does this language expressly waive Sommer's right to assert a lien against the subsequent judgment in Rhoads' favor. The agreement provided specifically that monthly payments of $500 were expected, and it is reasonable to structure a retainer agreement such that a guaranteed and immediate stream of $500 payments is received if there is not a settlement or judgment in the client's favor.[16] There is no inconsistency between payment by installments over a period of time and holding a security for payments, *i.e.*, a lien against the cause of action. Finally, although the Circuit Court reasoned that a monthly payment schedule of $500 per month was inconsistent with the notion that the payment would be secured by any judgment and, therefore, inferred a waiver, we conclude that there is nothing in § 10–501 or Md. Rule 2–652 that precludes the filing of a

---

16. Sommer argues that Rhoads was obligated to pay all amounts she owed immediately, without the $500 per month payment schedule, because Rhoads breached the retainer agreement 1) by failing to make timely payments under the agreement, and 2) because she filed bankruptcy. These arguments were not grounds on which the Circuit Court entered summary judgment, and we decline to consider them. *Sadler v. Dimensions*, 378 Md. 509, 537 n. 10, 836 A.2d 655, 671 n. 10 (2003) ("Ordinarily, an appellate court should review a grant of summary judgment only on the grounds relied upon by the trial court." (*quoting Blades v. Woods*, 338 Md. 475, 478, 659 A.2d 872, 873 (1995))); *see also* Md. Rule 2–501.

lien where the retainer agreement also provides for a monthly payment obligation. We agree with the Court of Special Appeals that Rule 2–652 allows the Circuit Court to direct that, for example, the appropriate part of the amount owed under the judgment or settlement be paid into court or an escrow account and held as security or paid to the attorney in monthly increments.

As we have noted previously, the attorney's lien was created "to protect attorneys from being cheated by their clients by preventing the clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained." *Consolidated Construction v. Simpson,* 372 Md. 434, 461, 813 A.2d 260, 277 (2002) (quoting *Ashman v. Shecter,* 196 Md. 168, 174, 76 A.2d 139, 142 (1950)). Sommer provided legal services that contributed to the judgment in Rhoads' favor. We hold that Sommer has the right to assert an attorney's lien on Rhoads' judgment.

Our conclusion that Sommer may assert the lien, however, does not address the question of what portion of the judgment resulted from Sommer's legal services. The Maryland statute states clearly that an attorney may assert a lien from the time the action or proceeding begins on a "judgment or award that a client receives *as a result of legal services* that the attorney at law performs." § 10–501 (emphasis added). Sommer is entitled to assert an attorney's lien on the judgment, even though he was not representing the client at the time of judgment, because he provided some legal services (*e.g* ., filing the initial complaint, at a minimum) that contributed to the judgment. We leave the question of what portion of the judgment was a result of legal services performed by Sommer to be addressed by the Circuit Court upon remand.

## VI.

Whether a § 10–501 attorney's lien survives a bankruptcy discharge even if no notice of the intent to claim a lien was given prior to the bankruptcy is a matter of first impression before this court. Rhoads argues that any debt owed to

Sommer under the retainer agreement and that could have been redeemed under a § 10–501 lien was discharged in bankruptcy before any lien was claimed or created. Sommer asserts that the lien came into existence at the beginning of his representation, that notice is required only to assert the lien, and Rhoads' bankruptcy had no effect on his ability to enforce an *in rem* lien.

We consider first when the lien is established and what notice is required, if any, to establish the lien. As we have noted, the plain language of § 10–501 states that "an attorney at law *has* a lien on: (1) a cause of action or proceeding of a client of the attorney at law from the time the cause of action arises or the proceeding begins ..." (emphasis added). Rhoads asserts that this language creates only a right to assert a lien, as opposed to an actual enforceable lien, and that § 10–501 requires an attorney to give notice under Rule 2–652 and bring an action to establish the lien. We disagree.

The plain language of § 10–501 establishes a lien from the inception of a cause of action.[17] Moreover, § 10–501(d),

---

**17.** We note that, as pointed out by the Court of Special Appeals, many courts interpreting attorney's liens have agreed that although the lien does not attach until after the bankruptcy, once it does attach, it relates back and takes effect from the commencement of the attorney's services or the action. *See In re Pac. Far E. Line, Inc.*, 654 F.2d 664, 669 (9th Cir.1981) ("Under California law, the lien takes effect from the date it was created; upon the fund's production, the lien attaches to the specific asset"); *Hanna Paint Mfg. Co. v. Rodey, Dickason, Sloan, Akin & Robb*, 298 F.2d 371, 373 (10th Cir.1962) ("The lien of an attorney for services rendered in an action relates back to, and takes effect from, the time of the commencement of the services; when it attaches to a judgment, it is superior to the claim of a creditor in whose favor execution has been levied, or to a subsequent attachment, garnishment, or trustee process"); *In re Reinhardt*, 81 B.R. 565, 569 (Bankr.D.N.D. 1987) (attorney's pre-bankruptcy charging lien related back to the date the services commenced, and despite failure to give notice, and without explicit relation-back language, lien survived bankruptcy discharge); *In re Kleer–Span Truss Co., Inc.*, 76 B.R. 30, 31 (Bankr.N.D.N.Y.1985) (relation back applied when statute provided: "From the commencement of the action, ... the attorney who appears for a party has a lien upon his client's cause of action, claim, or counterclaim, which attaches to a verdict, [or] ... decision, judgment or final order in his client's favor, and the proceeds thereof"); *In re TLC of Lake Wales, Inc.*,

entitled "Execution" states that an attorney may bring an action under the lien only in accordance with the rules that the Court of Appeals adopts. Under Md. Rule 2–652, "[a]n attorney *who has a lien* under [§ 10–501] *may assert the lien* by serving a written notice by certified mail or personal delivery upon the client and upon each person against whom the lien is to be enforced." (emphasis added). Rule 2–652 presumes that an attorney actually has a lien, as set forth in § 10–501, and that the attorney merely is asserting the lien in accordance with this Court's rules. Nothing in Rule 2–652 requires an attorney to perfect the lien or lose the lien for failing to serve written notice within a particular time or before a bankruptcy proceeding. Indeed, the Rule presumes a lien exists and provides for a method to enforce or assert the lien. Thus, we hold that Sommer's lien was created before Rhoads filed her bankruptcy case, even though Sommer had not asserted the lien by providing notice in accordance with Rule 2–652 until after the bankruptcy discharge.[18]

Before analyzing whether Sommer's lien survived Rhoads' bankruptcy discharge, we consider whether the § 10–501 attorney's lien is an *in rem* or an *in personam* claim. The

---

13 B.R. 593, 595 (Bankr.M.D.Fla.1981) ("Although the charging lien does not attach until after judgment or recovery has been obtained, it relates back and takes effect from the date of the attorney's first commencement of services"); *In re E.C. Ernst, Inc.*, 4 B.R. 317, 320 (Bankr.S.D.N.Y.1980) ("The lien relates back and takes effect from the time the attorney's services were commenced"). These courts did not require that the statute or common law expressly use a term like "relates back." Rather they rested their decisions on their interpretation of the statute or common law as to the effective date of the lien. *See, e.g., In re Reinhardt*, 81 B.R. at 569 (noting lack of relation back language in North Dakota and Alaska attorney's lien statutes).

18. We note that the lien could not have been asserted in accordance with Md. Rule 2–652 prior to the bankruptcy because a final judgment had not yet been entered in Rhoads' favor. The distinction between whether Sommer actually had the lien, however, in the sense that the lien had attached, or whether he had a right to a lien, is not our focus. What is material is that Maryland law intended that the attorney's lien be effective at a time prior to Rhoads' bankruptcy. Md. Rule 2–652(b) does not affect the date the attorney's lien was created, as it concerns only the enforcement of an already existing lien.

United States Court of Appeals for the Fifth Circuit has noted that "proceedings to enforce such [attorney's] lien[s] are considered as proceedings *in rem* and may be enforced only against the proceeds of a judgment secured in the particular case." [19] *Hoxsey v. Hoffpauir*, 180 F.2d 84, 87 (5th Cir.1950), *cert denied*, 339 U.S. 953, 70 S.Ct. 841, 94 L.Ed. 1366. We agree. An attorney's lien under § 10–501(b) is an action *in rem*. Although § 10–501(b) recognizes the lien only "to the extent that, under a specific agreement between an attorney at law and a client, the client owes the attorney at law a fee or other compensation for legal services that produced the settlement, judgment, or award" this requirement does not change the *in rem* nature of the claim.[20]

▇▇▇▇▇▇ As Rhoads notes, a bankruptcy discharge releases the debtor from *personal* liability for pre-petition debts. Rhoads listed Sommer as a creditor holding an unsecured

---

**19.** The United States Court of Appeals for the Fifth Circuit was concerned with a New York attorney's lien statute. The New York statute stated as follows:

"Attorney's lien in action, special or other proceeding. From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien."

N.Y. Judiciary Law § 475 (McKinney 2005).

**20.** Many courts that have held that an attorney's lien relates back and takes effect from the commencement of the attorney's services or the action, even though the lien does not attach until after bankruptcy, acknowledge implicitly that the attorney's lien is an *in rem* claim. *See In re Pac. Far E. Line, Inc.*, 654 F.2d 664, 669 (9th Cir.1981); *Hanna Paint Mfg. Co. v. Rodey, Dickason, Sloan, Akin & Robb*, 298 F.2d 371, 373 (10th Cir.1962); *In re Albert*, 206 B.R. 636, 640 (Bankr.D.Mass. 1997); *In re Reinhardt*, 81 B.R. 565, 569 (Bankr.D.N.D.1987); *In re Kleer–Span Truss Co., Inc.*, 76 B.R. 30, 32 (Bankr.N.D.N.Y.1985); *In re Sea Catch, Inc.*, 36 B.R. 226, 233 (Bankr.D.Alaska 1983); *In re TLC of Lake Wales, Inc.*, 13 B.R. 593, 595 (Bankr.M.D.Fla.1981); *In re E.C. Ernst, Inc.*, 4 B.R. 317, 320 (Bankr.S.D.N.Y.1980).

nonpriority claim in the amount of $190,000 for legal services. This *in personam* claim was discharged after her bankruptcy filing. The discharge did not affect Sommer's *in rem* claim, however. *See Johnson v. Home State Bank,* 501 U.S. 78, 84, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991) (holding that, in a case involving a mortgage on real property, a bankruptcy discharge "extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem.*").

In her bankruptcy filing, Rhoads acknowledged an asset that could potentially subject her to an *in rem* claim, namely, that she was party to an active civil case. The bankruptcy trustee concluded there was no property available for distribution from the estate, and released to Rhoads any interest she might have in the stayed litigation. Because the trustee relinquished the action back to Rhoads, the property became unaffected by the bankruptcy and was available to debtors or creditors. 11 U.S.C. §§ 506(d), 522(c)(2) (2000); *see Hernandez v. Suburban Hosp.,* 319 Md. 226, 236–37, 572 A.2d 144 (1990)(" 'We instead follow the majority of courts which hold that the Bankruptcy Code and its legislative history plainly establish the better rule of law—that valid liens that have not been disallowed or avoided survive the bankruptcy discharge of the underlying debt.' ") (quoting *Estate of Lellock v. Prudential Ins. Co. of Am.,* 811 F.2d 186, 189 (3rd Cir.1987); *see also In re Moody,* 277 B.R. 858, 861 (Bankr.S.D.Ga.2001) ("The effect of abandonment by a trustee is to divest the bankruptcy estate of control over the abandoned property and revest title in the debtor. In doing so, the property becomes part of the debtor's non-bankruptcy estate, just as if no bankruptcy occurred." (citations omitted)); *Saltarelli & Steponovich v. Douglas,* 40 Cal.App.4th 1, 5, 46 Cal.Rptr.2d 683, 686 (1995) ("[T]he discharge of an obligation to pay an attorney for prepetition legal services does not prevent the attorney from enforcing a lien securing payment for those services unless the lien has been disallowed or avoided during bankruptcy.").

Rhoads argues that Sommer was notified that his claim for legal services was classified as unsecured and that Sommer failed to file a proof of claim in the bankruptcy proceeding. Sommer did not contest the unsecured *in personam* debt and, as we have discussed, he cannot recover it because it was discharged in bankruptcy. Because the *in rem* claim was abandoned and reverted to a status such that no bankruptcy had occurred, Sommer was not obligated to file any proof of claim in the bankruptcy estate in order to make his statutory attorney's lien claim. As a result, Sommer's lien, an *in rem* claim on any judgment or recovery in Rhoads' civil action, survived Rhoads' bankruptcy discharge of her *in personam* debts even though notice of the lien under Md. Rule 2–652 was not provided until after the bankruptcy.

## VII.

We turn to whether petitioner's constitutional due process rights were violated. The federal due process claim asserted here is based on the Fourteenth Amendment to the United States Constitution; the State claim derives from Article 24 of the Maryland Declaration of Rights. We have previously held that these two provisions "have the same meaning; and ... Supreme Court interpretations of the federal provision are authority for interpretation of Article 24." *Department of Transportation v. Armacost*, 299 Md. 392, 415–416, 474 A.2d 191, 203 (1984).

Rhoads asserts that a statute that creates a lien "without notice and opportunity for a prior hearing" deprives the owner of her property without procedural due process. Rhoads argues that for § 10–501 to be constitutional, no lien can "exist" until the opposing party has notice and an opportunity to be heard in opposition. Sommer responds that the statute is constitutional and that Rhoads did not suffer a violation of due process rights because (1) she knew of the attorney's lien several years before Sommer's complaint was filed, (2) Rhoads was not deprived of a substantial property interest, and (3) Md. Rule 2–652 provides both notice and a mechanism to adjudicate the lien.

Although constitutional due process is not a technical concept, there are established principles for analyzing whether the procedural protections demanded by a particular situation are present. *See Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). The analysis focuses on the governmental and private interests that are affected. *See id.* Specifically, it is well accepted that "identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335, 96 S.Ct. at 903. To invoke protections of procedural due process, however, a party must show that state action has been involved to deprive that party of a substantial interest in property. *Golden Sands Club v. Waller*, 313 Md. 484, 488 n. 4, 545 A.2d 1332, 1334 n. 4 (1988) (citations omitted).[21]

We consider whether the imposition of an attorney's lien statute deprived Rhoads of a substantial property right. In *Barry Properties v. Fick Bros.*, 277 Md. 15, 353 A.2d 222

---

**21.** At oral argument, respondents argued, relying on *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), that the attorney's lien statute does not constitute state action. In *Flagg*, the Supreme Court held that a warehouseman's proposed sale of goods entrusted to him for storage, as permitted by the self-help provision of New York's Uniform Commercial Code, was not an action attributable to the State of New York and thus did not constitute state action. *Id.* at 151–53, 98 S.Ct. at 1731–32. Rhoads counter argued that, similar to mechanics' liens, attorney's liens involve state action because they are created, regulated and enforced by the State. *See Barry Properties v. Fick Bros.*, 277 Md. 15, 353 A.2d 222 (1976). In their briefs to this Court, the parties did not address the state action element of due process. Because we hold that there was no substantial deprivation of a property right and therefore that no due process violation occurred, we need not reach the issue of whether the attorney's lien constitutes state action.

(1976), we held that Maryland's mechanics' lien statute [22] was unconstitutional because it allowed prejudgment seizures of a debtor's property "without notice and opportunity for a prior hearing." *Id.* at 19, 353 A.2d at 225. Rhoads asserts that the attorney's lien statute, like the mechanics' lien statute, creates a lien "without notice and opportunity for a prior hearing." We disagree.

The mechanics' lien in *Barry* was created as soon as work was performed or materials were supplied, with no requirement of prior notice to the owner. Under the statute, "a lien is created and attaches to the property as soon as work is performed or materials are supplied, and lasts until 'the expiration of 180 days after the work has been finished or the materials furnished, although no claim has been filed for them (with the clerk of the court).' " *Id.* at 19, 353 A.2d at 225–26 (citations omitted).

In order to secure a mechanics' lien, the statute provided that the contractor or subcontractor must file a claim, within 180 days after the work is finished or the materials furnished, containing specified information concerning the claim with the clerk of the circuit court of the county where the property is located, at which time the lien was recorded on a special "Mechanics' Lien Docket." *Id.* at 20, 353 A.2d at 226. Once filed with the clerk, the lien subsisted for one year from the date of its filing, unless a proceeding to enforce the lien was commenced, the validity of the lien was challenged or a bond was substituted for the lien. *Id.* The statute allowed a subcontractor, even if the owner had no contract or contact with the subcontractor and may not even have known that the subcontractor was working on the property, to file his claim with the Clerk of the Court *before* providing the owner with notice of intent to claim a lien.[23] *Id.* at 30, 353 A.2d at 231; *see also*

---

**22.** All references to the mechanics' lien statute are to the mechanics' lien statute in effect at the time *Barry Properties v. Fick Bros.,* 277 Md. 15, 353 A.2d 222 (1976) was decided.

**23.** The subcontractor was required to provide the owner with notice on an intent to make a lien claim within 90 days of furnishing labor or

*Accrocco v. Fort Wash. Lumber,* 255 Md. 682, 684, 259 A.2d 60, 61 (1969).

Because the mechanics' lien made it extremely difficult for the owner to sell or encumber his or her land—the lien constituted a cloud on the property owner's title—this Court concluded that the owner was deprived of a "significant property interest" when the mechanics' lien was imposed and, thus, the limitations of due process were applicable. *Id.* at 24, 353 A.2d at 228. We reviewed Supreme Court precedents and concluded that, "lacking extraordinary circumstances, statutory prejudgment creditor remedies which even temporarily deprive a debtor of a significant property interest without notice and an opportunity for a prior probable-cause-type hearing are ... unconstitutional...." *Id.* at 30, 353 A.2d at 231; *see North Georgia Finishing, Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 606, 95 S.Ct. 719, 722, 42 L.Ed.2d 751 (1975); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 614, 94 S.Ct. 1895, 1903–04, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin,* 407 U.S. 67, 96–97, 92 S.Ct. 1983, 2002–03, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 338–42, 89 S.Ct. 1820, 1821–23, 23 L.Ed.2d 349 (1969). Thus, we held that the mechanics' lien statute was unconstitutional because it permitted an owner to be deprived of a significant property interest without notice or a prior hearing. *Barry,* 277 Md. at 31, 353 A.2d at 232.

The attorney's lien at issue in the case *sub judice* differs in several important ways from the mechanics' lien at issue in *Barry.* At the outset, we note that the attorney's lien applies only to parties—the attorney and the client—who are in a contractual relationship with each other, whereas in *Barry* the subcontractor did not have a contractual relationship with the owner. *Barry,* 277 Md. at 21, 353 A.2d at 226. Additionally, the attorney's lien differs from the mechanics' lien because, although the attorney's lien commences upon the start of

materials, but such notice was not a condition precedent to filing the claim. *Id.* at 30, 353 A.2d at 231; *see also Accrocco v. Fort Wash. Lumber,* 255 Md. 682, 684, 259 A.2d 60, 61 (1969).

representation, the attorney's lien is *inchoate* until proceeds from a settlement, judgment, or award exist to which the lien can attach. In order to execute the lien, the procedures set forth in Md. Rule 2–652(b) must be followed. § 10–501(d).

The provisions of Md. Rule 2–652(b) and (c) provide for notice and an opportunity to be heard. Importantly, the Rule requires that an attorney assert a lien by "serving a written notice by certified mail or personal delivery upon the client and upon each person against whom the lien is to be enforced." Md. Rule 2–652(b). Only *after* providing this notice is the lien asserted and, thus, is the client potentially deprived of his or her right to the proceeds. Prior to the attorney serving notice, the third party is free to pay any proceeds to the client or any other person entitled to the proceeds. Furthermore, the Rule provides an opportunity to be heard because the client may immediately file an action in the "circuit court to adjudicate the rights of the parties in relation to the lien, including the attorney's entitlement to a lien ... and the amount of the attorney's claim." Md. Rule 2–652(c)(2). If an adjudication action is filed, the attorney may not seize or take possession of his or her portion of the proceeds until *after* the adjudication of the dispute. We conclude that the provisions of Md. Rule 2–652(b) and (c) adequately provide for notice and an opportunity to be heard and protect the procedural due process rights of the client.[24]

Sommer complied with the requirements of Md. Rule 2–652 by serving notice of his lien and Rhoads exercised her right under the Rule to adjudicate the lien. The Rule protects the dual interests of the creditor and the debtor in the property. Rhoads did not have an opportunity to be heard before notice of the lien was given, but upon notice she has the right to adjudicate the claim before any money may be transferred. These provisions do not allow a deprivation of property with-

---

**24.** We note that the Rules Committee was aware of and considered due process requirements before it recommended Md. Rule 2–652 to the Court of Appeals. For example, the minutes of the Rules Committee meeting on June 17, 1994 include a member stating that the rule "includes appropriate notice and an opportunity to be heard."

out procedural due process; the procedural protections are adequate for the demands of this particular situation. *See Mathews*, 424 U.S. at 334–35, 96 S.Ct. at 902–03. We hold that Rhoads was not significantly deprived of property without notice and that she has had an opportunity to be heard regarding the adjudication of her claim.

Because we have held that there was no deprivation of a substantial property right without notice or the opportunity to be heard, we need not analyze whether state action was involved. We hold that invocation of Maryland's statutory attorney's lien did not violate Rhoad's procedural due process rights.

## VIII.

Based on our analysis of § 10–501 and Md. Rule 2–652, we hold that Sommer is entitled to assert an attorney's lien against Rhoads' judgment. Sommer's lien, however, is limited by the terms of the parties' retainer agreement. The retainer agreement specifically states that Sommer may be entitled to a contingent premium if Rhoads obtains a judgment, but that the "Contingent Premium shall not result in total fees (i.e. the Guaranteed Fee and the Contingent Premium) exceeding 30 percent of the Total Recovery." [25] Thus, Sommer is entitled to up to 30% of the $120,006 judgment obtained by Rhoads. In Rhoads' December 3, 2001 Motion and Affidavit for Permission to Appeal In Forma Pauperis filed with the Supreme Court, Rhoads acknowledged that she had already paid $35,000 to Sommer. [26] Consequently, we note that Sommer

---

**25.** The retainer agreement defines the total recovery as "the total amount recovered by settlement or judgment, including any amount recovered as interest, attorney's fees and punitive damages with respect to any claims brought or asserted on behalf of Client, whether brought or asserted separately or together, and whether brought or asserted in a lawsuit, a charge with an administrative agency (including Client's pending Federal Equal Employment Opportunity Commission (EEOC) and Department of Labor charges) or informally."

**26.** At oral argument before this Court, the parties confirmed this information.

has received almost all of the contingent premium he may redeem. On remand, the Circuit Court should resolve the accounting of costs, in accordance with this opinion.[27]

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS. CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EVENLY BETWEEN PETITIONER AND RESPONDENTS.*

---

**27.** Section 10–501 states that Sommer is to be compensated from the judgment that Rhoads receives "as a result of legal services that the attorney at law performs." § 10–501(a)(2). We note that the trial court did not address the statutory requirement that Sommer's legal services must have contributed to the judgment. Because it did not reach this question in granting summary judgment, we will not address it in this appeal. *See PaineWebber v. East*, 363 Md. 408, 422, 768 A.2d 1029, 1036–37 (2001).